**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Robert Peter GILL, Jr.**

**No. 1351 WDA 2016**

Superior Court of Pennsylvania.

Submitted January 30, 2017

Filed March 28, 2017

Robert H. Hartley, Jr., Assistant District Attorney, Mercer, for Commonwealth, appellant.

Ronald D. Amrhein, Jr., Sharon, for appellee.

BEFORE: OLSON, RANSOM, JJ., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:

The Commonwealth appeals from the September 2, 2016, order entered in the Court of Common Pleas of Mercer County granting Appellee Robert Peter Gill, Jr.'s amended motion *in limine* for the admission of evidence of similar crimes, behaviors, and/or acts.[1] We reverse and remand for further proceedings.

The relevant facts and procedural history are as follows: On June 2, 2015, Appellee was charged by criminal complaint with burglary, theft by unlawful taking, receiving stolen property, criminal trespass, terroristic threats, tampering with or fabricating physical evidence, and intimidation of witnesses.[2] In the accompanying affidavit of probable cause, Pennsylvania State Police Trooper Charles Turik averred that, on August 26, 2013, he was assigned to investigate the report of a burglary, which occurred at a residence in French Creek Township sometime between July 26, 2013, and August 26, 2013. Trooper Turik indicated that the owner of the residence ("the victim") informed him that money, which he had been saving for his wife's care in a nursing home, totaling $40,000.00 in one hundred dollar bills, had been removed from his home. Specifically, Trooper Turik averred as follows:

The victim advised that he had been keeping the money in a bank bag inside of a lockbox in the basement. The victim advised that the last time he knew that the money was there was on 07/26/13 when he put his monthly deposit in the box. He further advised that since that time he has not observed any sign of forced entry into his residence. The victim advised that he suspected that entry had been made via the key pad on the garage door. I asked the victim who else besides him knew the code to the garage door. The victim advised that besides himself [the] only two people [who] knew the code were his neighbor [Ms.] Prather, and an acquaintance [Appellee]. The victim advised that he did not suspect [Ms.] Prather as he had known her for over 25 years and he trusted her completely. The victim advised that he had only known [Appellee] for a few years[,] that he had financial problems[,] that he had lent him money in the past[,] and that [Appellee] had recently declared bankruptcy.

[Appellee] was interviewed relative to this investigation[.] [He] admitted to having knowledge of the money[,] where it was kept[,] and to where the key to

* Former Justice specially assigned to the Superior Court.

1. The Commonwealth has certified that the trial court's order terminates or substantially handicaps its prosecution of Appellee. *See* Pa. R.A.P. 311(d).

2. 18 Pa.C.S.A. §§ 3502(a)(2), 3921(a), 3925(a), 3503(a)(1)(i), 2706(a)(1), 4910(2), and 4952(a)(1), respectively.

the lockbox was kept[.] [H]e also admitted to having been to the victim's residence during the time frame when this crime occurred and the victim was not home. [The trooper] advised [Appellee] that it had been brought to [his] attention that [Appellee] had recently purchased at [*sic*] pulling truck to run in the Stoneboro Fair. [Appellee] was questioned as to who he brought the truck from and what he had paid for it. [Appellee] advised that he had bought the truck from a [Mr.] Nuhfer and that he had paid $1000.00 [ ] for the truck.

Nuhfer was interviewed relative to this investigation and advised that he had sold the truck to [Appellee] and that [Appellee] had paid him $1900.00 [ ] in all $100.00 [ ] bills.

Further in this investigation, [the trooper] interviewed a [Mr.] Beck III who advised [the trooper] that sometime in July or August of 2013 he had been contacted by [Appellee] who requested him to give him a ride. [Mr.] Beck advised that [Appellee] directed him to a residence which he later learned was the home of the victim and that [Appellee] then exited the vehicle advising that he had to "do something for a friend," and that he would call him to come back and pick him up when [he was] finished. [Mr.] Beck advised that upon returning to the residence when called by [Appellee], [Appellee] was in possession of several large rolls of $100.00 [ ] bills. [Mr.] Beck advised that [Appellee] then directed him to drive him to the Greenville, P[A] area [ ] in an attempt to contact a subject about purchasing a pulling truck. At some point [Appellee] had advised [Mr.] Beck that he had taken the money from the victim's residence [and] gave him $4200.00 [ ] to purchase a new truck[.] [Appellee told him] not [to] tell anyone about the burglary. [Mr.] Beck further advised that [Appellee] told him

"I will get 20 years for taking this money what is another 10 years for killing you if you tell on me."

Affidavit of Probable Cause, filed 6/2/15.

Counsel entered an appearance on behalf of Appellee, and on August 1, 2016, he filed a motion *in limine* for the admission of certain evidence. Specifically, in the motion, Appellee averred that he recently became aware that an unknown party or parties unlawfully took money from the victim's residence on or about June 23, 2016, and then illegally re-entered the residence four days later, on or about June 27, 2016. He averred that the 2016 burglary incidents appeared to be identical to the 2013 burglary, for which he was charged, such that there was a serious question raised as to the identity of the perpetrators. Specifically, he relevantly averred the following with regard to the June 23, 2016, burglary:

Interestingly, the allegation of burglary with regard to June 23, 2016[,] appears virtually identical to the charges in the matter before this [ ] Court, including;

a. The alleged amount stolen is again approximately $40,000[.00];

b. The money is again allegedly stolen from a Sentry 1106 safe (lockbox);

c. The alleged perpetrator in the June 23, 2016[,] crime is alleged to have used the key to gain access to the safe/lockbox;

d. There were no signs of forced entry as is believed the perpetrators entered through a "typically unlocked" basement door;

e. It is believed the perpetrator is someone the victim knew and who knew about the safe; and

f. The crime is alleged to have occurred over a one month period.

Appellee's Motion *In Limine*, filed 8/1/16.

With regard to the June 27, 2016, incident, Appellee admitted that it "differs in that there is an apparent attempt at forced entry as opposed to an entry through an unlocked door[;]" however, he noted that there were similarities that made the crime, at the very least, a "coincidence" to the earlier burglaries. *See id.*

On August 25, 2016, Appellee filed a counseled motion entitled "Amended Motion *In Limine* for Admission of Evidence of Similar Crimes, Behavior and/or Acts." Therein, Appellee incorporated fully his August 1, 2016, motion *in limine,* and additionally averred that the alleged victim's daughter informed defense counsel that, in 1995, the victim wrongfully accused her of stealing $30,000.00 from him. She also informed defense counsel that the victim had accused two men of breaking into his house and stealing tools. Thus, Appellee sought to introduce at his trial the circumstances and evidence relevant to the 2016 burglary, as well as the victim's daughter's testimony related to the victim's 1995 theft allegation and the victim's accusation against the two men related to stolen tools.

The matter proceeded to a hearing before the trial court on August 29, 2016, at which defense counsel argued evidence regarding the 2016 burglary of the victim's home should be admissible at Appellee's trial in order to demonstrate that someone else, and not Appellee, committed the 2013 burglary. Citing to various case law, defense counsel argued the circumstances of the 2016 burglary incidents were admissible since it tended to prove that another individual committed the crimes for which Appellee was charged. In this regard, defense counsel relevantly argued the following:

[T]he allegation of 2013 is [Appellee] entered the garage using a code. There was no forced entry. The statement by the alleged victim is there's only two people that could have done that, because only two other people have the garage code.

In the new case, the victim indicates that they probably came through the basement door, because the basement door is typically unlocked. So I think that's cross-examination.

With regard to whether they are highly similar, and regarding potential of someone else having committed the crime, and I have reviewed the new police reports, but the Court did not require him to provide copies, and I never had copies to go through. So to the extent I may be slightly off, [the Commonwealth], I believe, is going to offer the reports to Your Honor.

My client's crime is alleged to have occurred sometime between July 26th and August 26th. Our understanding of the new crime is sometime between May 1st and June 23rd. Both are $40,000[.00]. I think the new crime is also in hundred dollar bills, but I'm not sure enough to represent that to the Court.... Same victim in both. Both were entering [the subject residence]. Both were money in a lockbox. In both the key was used to gain entry to the lockbox.

Now, in the 2016 case, someone first tried to pry it open before they went and got the key, but they found the lockbox, they still used the key. Both, no sign of forced entry. In both cases, the victim says it had to be someone that knew [him] and that knew about the safe.

Another interesting fact, Your Honor, in 2013 the victim alleges he had been at the nursing home a lot when his wife was sick and that's probably when they

robbed him. Now he says I was at the hospital a lot and that's probably wh[en] they robbed [him]. It is highly specific. Same person, same amount of money, same house.

\*\*\*

The 2016 case, they've not interviewed my client. They admitted my client is not a suspect. The jury can decide whether it is or how important it is, but there's somebody else that gained entry to the house and stole $40,000[.00] allegedly.

N.T., 8/29/16, at 8–11.

In response, at the hearing, the Commonwealth argued that the 2016 burglary was irrelevant and dissimilar to the instant 2013 burglary. Specifically, the Commonwealth argued:

The case that we're dealing with occurred, and actually we will be moving to amend the complaint to [the] date of August 22, 2013. At that time, [the victim] had,... about $40,000[.00] in a lockbox in his basement.

His wife had been admitted to the nursing home. He was making trips back and forth, and at that time there were two people who had access to his garage door code, his neighbor, [Ms.] Prather, and [Appellee], and that's what he told the police.

At that time, there were no signs of forced entry into the home. There were also no signs of forced entry to the lockbox. He kept the lockbox in the basement. He kept his keys to the lockbox hanging on the wall. Someone knew exactly where the key was, opened the lockbox and took the money. That was the case in 2013.

If you fast forward to 2016, [the victim] was admitted to the hospital himself. He was having some issues with his heart. He did have a large sum of money, he indicated approximately around $40,000[.00] in his house at that time. That's the only similarity in these cases.

The person who stole the money from him, as he reported in 2016, entered, according to the police report, by climbing onto a pile of wood that was located next to his second floor deck. They found evidence, because two of the logs had been knocked off, and they found a shoe with prints on the window ledge, and then entry in through a sliding glass door, which [the victim] kept unlocked, into the house. Once in the house, it was observed there were pry marks on the lockbox, and someone had first attempted to pry open the lock, and then after some time had located and used the key to open the box.

Four day later, again there was an attempt to burglarize. There are additional pieces of lumber from the woodpile that are disturbed on the ground, additional footprints, as well as what the police believe to be a handprint on the downspout, but at this point, [the victim] locked the sliding glass door, and there was forced entry into the basement. There was splintered wood found there, the strike plate was missing, and there was evidence that someone had broken into the basement by force. Again, had opened the lockbox this time using the key. No additional signs of forced entry, because they knew at that point where the key was and there was no money in the box at this time.

*Id.* at 11–13.

At the conclusion of the hearing, the trial court ruled that it was permitting evidence with regard to the 2016 burglary of the victim's home to be admitted at Appellee's trial. *Id.* at 19.[3] Moreover, upon

---

**3.** We note that, consistent with the amended   motion *in limine*, defense counsel argued that

defense counsel's request, and over the Commonwealth's objection, the trial court indicated that it was directing the Commonwealth to provide Appellee with all reports, statements, and investigatory files related to the 2016 burglary. *Id.* at 19–20. The trial court then entered an order on September 2, 2016, which provided the following:

> [T]his matter having come before this Court on an amended motion *in limine* for admission of evidence of similar crimes, behavior and/or acts, and upon argument of same, it is hereby ORDERED that the incident from 2016 shall be permitted.
>
> It is further ORDERED that the Commonwealth shall provide to [Appellee] copies of all reports, statements and investigatory files regarding the 2016 incident within ten days of today's date.

Trial Court Order, filed 9/2/16.

On September 8, 2016, the Commonwealth filed a notice of appeal averring therein that the trial court's pre-trial order substantially handicaps the prosecution. All Pa.R.A.P. 1925 requirements have been met. In its Rule 1925(a) opinion, the trial court clarified that it granted Appellee's amended motion *in limine*, thereby allowing for the entry of evidence from the 2016 burglary "because it was so similar in nature to the one in this case." Trial Court Opinion, filed 10/19/16.

█ The Commonwealth avers the trial court erred in ruling that evidence and testimony related to the 2016 burglary incidents involving the victim's home would be properly admissible in Appellee's trial for the instant 2013 burglary of the victim's home. Specifically, the Commonwealth argues that the 2016 burglary incidents do not bear a "highly detailed similarity" to the 2013 burglary such that the incidents are not relevant to prove another individual committed the crimes for which Appellee was charged.

█ Initially, we note:

In evaluating the denial or grant of a motion *in limine*, our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

*Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa.Super. 2014) (quotation marks and quotations omitted).

█ The following legal precepts are pertinent to our review. Pennsylvania Rule of Evidence 402 provides that, generally, "[a]ll relevant evidence is admissible" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is that which has "any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401(a), (b). Thus, our rules pre-

---

the victim's daughter's allegations that, in 1995, the victim had accused her of stealing $30,000.00 from his house, as well as accused two men of stealing tools from his house, should be admissible at Appellee's trial. *Id.* at 10. The Commonwealth responded that the 1995 incident, as well as the allegations of theft of tools, was remote in time and other-

wise irrelevant to the 2013 burglary of the victim's home. *Id.* at 16–17. The trial court ruled it was not permitting evidence or testimony with regard to the victim's 1995 theft allegation or the victim's allegations with regard to two men stealing tools. *Id.* at 19. However, the trial court did not include this ruling within its September 2, 2016, order.

clude testimony and evidence if it "does not tend to prove or disprove a material fact in issue, or to make such a fact more or less probable, or if it does not afford the basis for a logical or reasonable inference or presumption as to the existence of a material fact in issue." *Commonwealth v. Thompson,* 779 A.2d 1195, 1200–01 (Pa.Super. 2001) (quotation marks, quotation, and citation omitted).

Evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible. *See Commonwealth v. Palagonia,* 868 A.2d 1212 (Pa.Super. 2005). That is, "criminal defendants are entitled to offer evidence that some other person committed a similar crime at or around the same time they are alleged to have committed a crime." *Id.* at 1216.

However, as this Court has held:
Evidence to establish this fact is admissible after consideration of two distinct factors that coalesce to establish its relevance and probative value. Those factors are: 1) the lapse of time between the commission of the two crimes; and 2) the resemblance between the methodologies of the two crimes. Thus, even if the time lapse between commission of the crimes is brief . . ., the evidence is not admissible unless the nature of the crimes is "so distinctive or unusual as to be like a signature or the handiwork of the same individual."

*Id.* (citations and quotation omitted).

Moreover, our Supreme Court has recognized:
the issue is whether there was a logical connection between the two crimes in question that would allow admission of this evidence to prove the identity of the perpetrator. The probative value of the degree of similarity of the crimes is inversely proportional to the time period separating the crimes.

*Commonwealth v. Bronshtein,* 547 Pa. 460, 478, 691 A.2d 907, 916 (1997) (citations omitted). *See Commonwealth v. Tyson,* 119 A.3d 353, 359 (Pa.Super. 2015) (*en banc*) ("Although remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question.") (quotation marks and quotation omitted)).

With this standard in mind, we conclude that the 2016 burglary incidents and the crime in this case (the 2013 burglary) are not so highly similar, distinctive, or unusual as to reveal the handiwork of an individual. To clarify, although the June 23, 2016, and June 27, 2016, incidents are arguably themselves similar enough to be considered distinctive,[4] the conduct in the instant 2013 burglary was different therefrom.

For instance, with regard to the instant 2013 burglary, the affidavit of probable cause reveals that entry was made into the victim's home via the use of the garage door code, and the lockbox was opened with the use of a key, which was hanging on the wall near the lockbox. The victim reported there was no forced entry into the house and no signs of forced entry to the lockbox. Further, there were no tools utilized.

With regard to the 2016 incidents, on the other hand, the manner of entry into

4. We note the scope of the trial court's September 2, 2016, order is not clear (*i.e.,* it does not indicate whether it includes evidence related solely to the initial 2016 burglary or whether it also includes the subsequent entry four days later). In any event, and as discussed more fully *infra,* whether considered in tandem or separately, the incidents do not bear a highly detailed similarity to the crime with which Appellee is charged. *See Palagonia, supra.*

the house was different as compared to the 2013 burglary. Both the June 23, 2016, and June 27, 2016, incidents involved the initial use of a woodpile to gain access to the second floor deck of the victim's house, in order to attempt entry through a sliding glass door. In the first 2016 incident, the sliding glass door was unlocked, thus requiring no force to gain entry; however, in the second 2016 incident, the sliding glass door was locked resulting in the alternate forced entry through the basement door by removing the door's strike plate to gain entry. Further, unlike with the 2013 burglary, the suspect in the June 23, 2016, burglary attempted to pry open the lockbox and, after being unable to do so, apparently discovered and utilized the key hanging nearby on the wall. In the incident occurring four days later, the key was used with no additional damage to the lockbox. Therefore, unlike in the 2013 burglary, during both of the 2016 incidents, tools/force were utilized to either gain access to the house or to attempt to open the lockbox.

Based on the aforementioned, and additionally in light of the remoteness of time between the 2013 and 2016 incidents, we conclude that the trial court erred in "allow[ing] for the entry of evidence from the 2016 burglary [on the basis] it was so similar in nature to the one in this case." Trial Court Opinion, filed 10/19/16. We agree with the Commonwealth that the fact the burglaries involved the same residence, and the victim reported to have similar amounts stolen in the 2013 and June 23, 2016, burglaries, are not sufficient factors by themselves to conclude the nature of the crimes was "so distinctive or unusual as to be like a signature or the

handiwork of the same individual." *Palagonia*, 868 A.2d at 1216. *See Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013) ("[T]here must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.") (quotation marks, quotation, and citation omitted)); *Commonwealth v. Nocero*, 399 Pa.Super. 346, 582 A.2d 376, 379 (1990) ("[W]here there is a time lapse of several years or months between the time that the offenses were committed, then evidence of the other crime has been held to be inadmissible.") (citations omitted)). Accordingly, we reverse the trial court's September 2, 2016, order [5] and remand for further proceedings consistent with this decision.

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

**5.** The Commonwealth also contends the trial court erred in ordering the Commonwealth to provide Appellee with copies of all reports, statements, and investigatory files regarding the 2016 incidents. In light of the fact the trial court ordered such disclosure solely in sup-

port of its ruling that the 2016 incidents were admissible to prove Appellee did not commit the instant crime, and in light of our discussion *supra,* we agree the trial court erred in this regard.