J-S61042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL WILLIAMS, | |
| Appellant | No. 3078 EDA 2016 |

Appeal from the Judgment of Sentence August 10, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0003416-2012
CP-51-CR-0003419-2012

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 27, 2017**

Appellant, Michael Williams, appeals *nunc pro tunc* from the judgment of sentence imposed after his jury conviction of criminal conspiracy—aggravated assault, burglary, and fleeing or attempting to elude a police officer.[1]  We affirm.

We take the following background facts and procedural history from the trial court's December 7, 2016 opinion and our independent review of the certified record.

> On January 10, 2012, around 7:00 p.m., Philadelphia Police Officer Christopher Culver and his partner, Officer Don Williams,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 903(a) and 3502(a), and 75 Pa.C.S.A. § 3733(a).

patrolled the 2800 block of Ruth Street in full uniform in a marked police car in Philadelphia. (*See* N.T. Trial, 6/03/15, at 29-30). An unidentified white female ran towards their car, pointed at a silver Chevy Impala with tinted windows that was driving away, and said she had been robbed.[a] (*See id.* at 30, 40, 42). The officers pursued the car with lights and sirens. (*See id.* at 31). While in pursuit, they checked the car's license plate number and found that it was registered to a Jeep rather than an Impala. (*See id.* at 41). They attempted a traffic stop. (*See id.* at 31-32). The driver initially complied, but drove off at a high speed as soon as Officer Williams exited the squad car. (*See id.*). The officers took off after them and later identified Appellant as the driver of the Impala. (*See id.* at 31-32, 127).

> [a] The trial court instructed the jurors that the statements made by the unidentified white female are introduced for the sole purpose of explaining the officers' actions and are not offered for the truth. (*See* N.T. Trial, 6/03/15, at 30-31).

During the pursuit, the Impala nearly struck a police car from the 24th District and sped through all stop signs and traffic lights. (*See id.* at 42-43, 46). The car struck a barrier at Front Street but continued to drive down the wrong way on Huntingdon Street with a blown tire. (*See id.* at 33, 40-46). When the chase reached Emerald Street, the Appellant's co-defendant, Yassir Gayle,[2] leaned out of the passenger side and shot twice at the officers' car. (*See id.* at 33, 46; N.T. Trial, 6/05/15, at 164-66). The officers radioed for help and a police helicopter unit began tracking the Impala from the air. (*See* N.T. Trial, 6/03/15, at 32, 47).

Gayle and the other passenger, Eric Livingston, ran out of the car on the 2100 block of Frankford Avenue. (*See id.* at 51-53, 84). Officers pursued them on foot and attempted an arrest, which led to a violent struggle with kicking and punching. (*See id.* at 53-55). Approximately a dozen other officers converged on the scene and eventually completed the arrest. (*See id.* at 84). The arresting officers recovered two loaded, operable handguns with obliterated serial numbers. (*See id.* at 56; N.T. Trial, 6/05/15, at 184). Counsel[] stipulated at trial that none of the

_____

[2] Yassir Gayle filed a separate appeal at docket number 230 EDA 2016.

defendants were licensed to carry firearms at that time. (***See*** N.T. Trial, 6/05/15, at 208).

The Appellant drove off after letting Gayle and Livingston out of the car. He eventually crashed the Impala into a parked car at Memphis and Firth Streets, jumping from the moving vehicle just before collision. (***See*** N.T. Trial, 6/04/15, at 13). He then fled on foot, attempted to enter a nearby house through an alleyway door, took off his vest, and threw it away. He continued looking for a place to hide, climbing over yard fences and walls. The helicopter unit relayed his location to officers on the ground. (***See id.*** at 7-8, 88).

The Appellant eventually entered a house, occupied by Ms. Genwa Gliwa and her mother, through an unlocked back door on Cumberland Street, between Memphis and Tulip Streets. (***See id.*** at 88-89). The Gliwas noticed sudden police activity outside their house with sirens and helicopters. (***See id.*** at 89). A few minutes later, Ms. Gliwa sensed the Appellant standing in a hallway behind her and her mother. (***See id.***). They realized he must have been the cause of the police activity and became very frightened, screaming at him to leave. (***See id.*** at 92-93). Ms. Gliwa testified that he wanted them to hide him from police or to give him different clothes to wear. (***See id.*** at 93). She screamed that she was going to call the cops. He told her not to reach for her phone and picked up her dog. (***See id.***). She was afraid he intended to hurt the dog. (***See id.***). Eventually, Ms. Gliwa convinced the Appellant to leave, and she pushed him out the front door and shut it behind him. (***See id.*** at 94). She testified that, by this time, there were thirty to forty police officers outside their house, along with fifteen to twenty neighbors who had come out to see the commotion. (***See id.*** at 107, 110). Officers immediately approached the Appellant, who claimed he was a lawful resident there. He was quickly apprehended when it became clear that he could not confirm basic information like the address of the house. (***See id.*** at 107).

(Trial Court Opinion, 12/07/16, at 3-5) (one footnote omitted; some record citations and record citation formatting provided).

On June 9, 2015, the jury convicted Appellant of the aforementioned crimes. On August 10, 2015, the trial court sentenced him to an aggregate

term of not less than seventeen nor more than thirty-four years' incarceration, plus eight years of probation. The court denied Appellant's motion for reconsideration on November 23, 2015. On December 21, 2015, Appellant filed an appeal that this Court quashed as untimely. On July 28, 2016, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his appeal rights *nunc pro tunc*. The court granted the petition on September 19, 2016. This timely appeal followed.[3]

Appellant raises nine questions for this Court's review:[4]

1.     Whether the trial court abused its discretion in denying Appellant's motion *in limine* to exclude admission of the hearsay police report of an unidentified white female declarant, who pointed to a silver Chevrolet Impala and told police that she was robbed by the occupants, including Appellant and the [c]o-[d]efendants, where such hearsay evidence is not admissible under the excited utterance exception, because the woman's

---

[3] Pursuant to the trial court's order, Appellant filed a timely statement of errors complained of on appeal, on October 8, 2016. The court filed an opinion on December 7, 2016. *See* Pa.R.A.P. 1925.

[4] We remind counsel of the oft-cited quote of the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

statement was wholly uncorroborated by the police or other civilian witnesses, and the probative value of the hearsay was outweighed by its prejudicial impact, thereby denying Appellant a fair trial?

2. Whether the trial court abused its discretion in denying Appellant's motion *in limine* to exclude admission of a bullet projectile recovered from the scene, where the projectile was excluded as having been fired from any of the firearms recovered by police in the case *sub judice*, and, therefore, had zero probative value, which was outweighed by its prejudicial impact, thereby prejudicing Appellant's right to a fair trial?

3. Whether the evidence was insufficient to support the jury's verdict finding Appellant guilty of [b]urglary, where there were no facts alleged that Appellant engaged in criminal activity after entering a dwelling without permission?

4. Whether there was insufficient evidence to support Appellant's conviction for [c]riminal [c]onspiracy to [c]ommit [a]ggravated [a]ssault, where there were no facts establishing an agreement between Appellant and [c]o-[d]efendant Gayle for Mr. Gayle to fire a gun in the direction of police officers, Appellant was acquitted by [the] jury of committing [a]ggravated [a]ssault, and Appellant was separated from the [c]o-[d]efendants prior to their altercation with police and was not even aware of the scuffle?

5. Whether the trial court abused its discretion in holding that the object offense underlying Appellant's conviction for [c]riminal [c]onspiracy was [a]ggravated [a]ssault, where Appellant was charged with [c]onspiracy generally but acquitted of [a]ggravated [a]ssault?

6. Whether the trial court abused its discretion in imposing a manifestly excessive sentence of ten (10) to twenty (20) years for Appellant's conviction for [b]urglary (F1), because Appellant's sentence greatly exceeded the aggravated guideline range of forty-eight (48) months to ninety-six (96) months, where Appellant had a prior record score of two and the offense gravity score for first degree [b]urglary is nine, and the sentence is greater than that necessary to satisfy Appellant's rehabilitative needs?

7.      Whether the trial court abused its discretion when it refused to grant Appellant's request for a curative instruction to remedy the prosecutor's inflammatory suggestion that Appellant's trial counsel was a racist during his summation to the jury, thereby prejudicing Appellant's right to a fair trial?

8.      Whether the trial court abused its discretion when it refused to grant Appellant's request for a curative instruction to remedy the prosecutor arguing the nature of the muzzle flash created by the alleged firing of [c]o-[d]efendant Gayle's firearm, where such facts were not presented into the evidence?

9.      Whether the trial court abused its discretion in sending jury instruction for second degree aggravated assault to jury during deliberations, where the Commonwealth only moved on the charge of first degree [a]ggravated [a]ssault for alleged [c]o-[d]efendant shooting firearm in the direction of police officers, but the jury's request for further instructions on [a]ggravated [a]ssault pertained to pre-arrest scuffle between [c]o-[d]efendants and police, which was not a focus of the Commonwealth's case-in-chief, thereby prejudicing Appellant's right to a fair trial?

(Appellant's Brief, at 6-8).[5]

In his first issue, Appellant argues that the trial court abused its discretion in denying his motion *in limine* to exclude testimony regarding "an unidentified white female declarant, who pointed to a silver Chevrolet Impala and told police that she was robbed by the occupants[.]"  (***Id.*** at 18)

---

[5] Appellant's sixty-page brief violates Pennsylvania Rule of Appellate Procedure 2035(a)(1) because it does not contain a certificate of compliance certifying that it complies with the word-count limit.  ***See*** Pa.R.A.P. 2135(a)(1) ("A principal brief shall not exceed 14,000 words and a reply brief shall not exceed 7,000 words[.] . . . A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages[.]").  Although we could quash on this basis, in the interest of judicial economy we decline to do so.

(unnecessary capitalization and emphasis omitted). Specifically, he maintains that the statement was inadmissible hearsay that was "not admissible under the excited utterance exception" because it was uncorroborated and its probative value was outweighed by its prejudicial impact. (*Id.* (unnecessary capitalization and emphasis omitted); *see id.* at 18-27). Appellant's issue does not merit relief.

> In evaluating the denial or grant of a motion *in limine,* our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion *in limine,* we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

*Commonwealth v. Gill*, 158 A.3d 719, 725 (Pa. Super. 2017) (citation omitted).

Pennsylvania Rule of Evidence 801(c) defines hearsay as an out of court statement "offer[ed] in evidence to prove the truth of the matter asserted[.]" Pa.R.E. 801(c)(2); *see id.* at (c)(1). "Thus, any out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." *Commonwealth v. Johnson*, 42 A.3d 1017, 1035 (Pa. 2012), *cert. denied*, 569 U.S. 922 (2013) (citation omitted).

Here, we first note that the statement at issue was not admitted pursuant to the excited utterance exception to the hearsay rule. The unidentified individual's statement that she had been robbed was not offered

for the truth of the matter at all, but "to explain the [subsequent] actions of the police officers" in pursuing Appellant and his co-defendants. (N.T. Trial, 6/03/15, at 30-31). Therefore, because the statement was not offered for the truth of the matter asserted, it was not hearsay. **See Johnson**, **supra** at 1035.

Additionally, at Appellant's request, the court expressly instructed the jury that the statement was offered only to explain the officers' course of conduct, thereby limiting any potential prejudicial impact. (**See** N.T. Trial, 6/03/15, at 11-12, 30-31). The jury is presumed to have followed this instruction. **See Commonwealth v. Aikens**, 168 A.3d 137, 143 (Pa. 2017) ("[J]urors are presumed to follow the court's instructions[.]") (citation omitted). Accordingly, Appellant's first issue lacks merit.

In his second claim, Appellant argues that the court abused its discretion in denying his motion *in limine* to suppress a bullet projectile recovered from the crime scene. (**See** Appellant's Brief, at 27-30). He maintains that the evidence was more prejudicial than probative where it was excluded as having been fired by any of the firearms recovered in the case *sub judice*. (**See id.**). Appellant's issue is waived.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In this case, a review of the record confirms the Commonwealth's observation that Appellant neither objected to the evidence in question, nor moved to preclude it, in the trial

court. (*See* Commonwealth's Brief, at 15-16). Instead, he asked for an offer of proof if the Commonwealth was going to introduce the "street bullet." (N.T. Trial, 6/03/15, at 7-8). The Commonwealth provided an offer of proof and the trial court stated, "Okay. I will allow that in. That's fine." (*Id.* at 9; *see id.* at 8-9). At no point, either before the offer of proof, or after the court's ruling, did Appellant object to the bullet's admission. (*See id.* at 7-9). Therefore, this issue is waived for our review. *See* Pa.R.A.P. 302(a).[6]

In his third claim, Appellant challenges the sufficiency of the evidence to support his burglary conviction "where there were no facts alleged that Appellant engaged in criminal activity after entering the dwelling without permission." (Appellant's Brief, at 30) (unnecessary capitalization and emphasis omitted). This issue is waived and would not merit relief.

Appellant's one paragraph argument on this claim does not contain any pertinent citation to authorities, discussion, or citation to the record, as is required by the Pennsylvania Rules of Civil Procedure. (*See* Appellant's Brief, at 30); Pa.R.A.P. 2119(a)-(c). Therefore, this claim is waived. *See Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014), *cert. denied*, 135 S. Ct. 480 (2014) ("[T]o the extent appellant's claims fail to contain developed

---

[6] Moreover, we briefly note that, Appellant utterly fails to establish how he was prejudiced by the admission of the bullet fragment. (*See* Appellant's Brief, at 27-30). In fact, he actually used the evidence to his own advantage. (*See* N.T. Trial, 6/08/15 Volume II, at 66) (counsel arguing that projectile "doesn't belong to this shooting. That is reason to doubt. That is not guilty.").

argument or citation to supporting authorities and the record, they are waived[.]").

Moreover, the issue would not merit relief. Our standard of review of this matter is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Scott*, 146 A.3d 775, 777 (Pa. Super. 2016), *appeal denied*, 166 A.3d 1232 (Pa. 2017) (citation omitted).

Section 3502 of the Crimes Code provides, in pertinent part, that "[a] person commits the offense of burglary if, with the intent to commit a crime therein, the person . . . enters a building or occupied structure . . . that is adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S.A. § 3502(a)(1)(ii). Also, pursuant to section 5126 of the Crimes Code, flight to avoid apprehension, "[a] person who

willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree . . . ." 18 Pa.C.S.A. § 5126(a).

In this case, the Commonwealth presented evidence that, after he led police on a high speed vehicle chase, Appellant fled from the officers on foot. He ran down an alley, climbing over fences and walls looking for a place to hide, before finally entering the backdoor of Ms. Gliwa's occupied home. Once inside, he asked the people present either to hide him or provide him with new clothing. Appellant only vacated the premises after Ms. Gliwa repeatedly screamed at him to leave.

The foregoing facts establish that Appellant entered the Gliwa home with the intent of committing a crime therein, namely he was attempting to flee to avoid apprehension. Accordingly, the trial court properly found that the evidence was sufficient to support Appellant's conviction of burglary. *See Scott*, *supra* at 777. Appellant's third claim would lack merit, even if it were not waived.

In his fourth issue, Appellant argues that there was insufficient evidence to convict him of conspiracy to commit aggravated assault because there was no evidence of an agreement, and he was acquitted of the underlying crime. (*See* Appellant's Brief, at 32-36). We disagree.

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission

he . . . agrees to aid such other person in the planning or commission of such crime[.]" 18 Pa.C.S.A. § 903(a)(2).

Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

Furthermore, flight, along with other circumstantial evidence, supports the inference of a criminal conspiracy.

*Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011), *appeal denied*, 42 A.3d 1059 (Pa. 2012) (citations and quotation marks omitted). Further:

Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002), *appeal denied*, 805 A.2d 521 (Pa. 2002) (citations omitted).

Here, the evidence established that Appellant and his co-conspirators led the police on a high-speed chase in the City of Philadelphia. During the pursuit, Appellant's co-defendant fired at the officers with a semi-automatic

handgun while Appellant continued to drive recklessly through the city streets in an attempt to evade them. Once the car was disabled, Appellant and the two other individuals ran away, attempting to elude police officers on foot.

Based on the foregoing, we conclude that there was sufficient evidence to support the jury's finding that this "web of evidence" linked Appellant to the conspiracy, beyond a reasonable doubt, and that he was "liable for acts of co-conspirators committed in furtherance of the conspiracy." **Devine**, **supra** at 1147 (citation omitted); **Lambert**, **supra** at 1016. Hence, although Appellant was acquitted of aggravated assault, the evidence supported the jury's conviction of criminal conspiracy to commit aggravated assault. **See Scott**, **supra** at 777. Appellant's fourth issue lacks merit.

In his fifth issue, Appellant claims that "the trial court abused its discretion in holding that the object offense underlying [his] conviction for conspiracy was aggravated assault, where [he] was charged with conspiracy generally and acquitted of aggravated assault." (Appellant's Brief, at 36). This allegation lacks merit.

First, we observe that the trial court did not hold, either during trial or at sentencing, (**see id.** at 36-39), that the object offense underlying the criminal conspiracy charge was aggravated assault. It is the Commonwealth that prepares the information identifying the crimes and their elements, and files it with the trial court. **See** Pa.R.C.P. 560(A). The information in this case, which was read to the jury, expressly identified the overt act of the

conspiracy as an attempt to assault the complainants, Officers Culver and Williams. (**See** Information, 4/02/12, at 1, 3; N.T. Trial, 6/03/15, at 14). Therefore, Appellant's claim that the trial court abused its discretion when it "held" that the underlying crime to the conspiracy charge was aggravated assault lacks merit.

Moreover, we note briefly that, to the extent that Appellant maintains that the court's conspiracy charge to the jury was insufficient because it did not identify the underlying crime of the conspiracy, (**see** Appellant's Brief, at 36-39), this claim is waived for his failure to object at trial. **See Commonwealth v. Messersmith**, 860 A.2d 1078, 1087 (Pa. Super. 2004), *appeal denied*, 878 A.2d 863 (Pa. 2005) (challenge to jury instructions waived where appellant failed to object during trial); **see also** Pa.R.Crim.P. 647(B). Also, Appellant's argument that, because he was acquitted of aggravated assault, the criminal conspiracy conviction should be understood to include a lesser predicate offense, (**see** Appellant's Brief, at 39-45), would similarly lack merit. It is well-settled that criminal conspiracy and aggravated assault are separate crimes, and the acquittal on one charge does not preclude conviction on the other. **See Commonwealth v. Phillips**, 879 A.2d 1260, 1263 (Pa. Super. 2005) ("The mere fact that a defendant is acquitted of the underlying charge is irrelevant to guilt on a related conspiracy charge.") (citation omitted). Appellant's fifth claim of error lacks merit.

In his sixth issue, Appellant claims that the trial court abused its discretion in imposing a manifestly unreasonable sentence of not less than ten nor more than twenty years' imprisonment on his burglary conviction. (*See* Appellant's Brief, at 45-49). Specifically, he maintains that the "sentence greatly exceeded the aggravated guideline range[,]" "is grossly disproportionate to the nature and circumstances of the offense, and [is] greater than that necessary to satisfy [his] rehabilitative needs." (*Id.* at 45) (unnecessary capitalization and emphasis omitted). This claim lacks merit.

Appellant's issue challenges the discretionary aspects of his sentence. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Edwards*, 71 A.3d 323, 329 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citation omitted).

Further,

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Id.* at 329-30 (citation omitted).

Instantly, Appellant filed a timely notice of appeal, preserved his claim in a timely post-sentence motion, and included a separate Rule 2119(f) statement in his appellate brief. (***See*** Notice of Appeal, 9/15/16; Post-Sentence Motion for Reconsideration of Sentence, 8/17/15, at unnumbered pages 1-2; Appellant's Brief, at 17). As such, he is in technical compliance with the requirements for challenging the discretionary aspects of his sentence. Additionally, we conclude that Appellant has raised a substantial question.[7] ***See Commonwealth v. Dodge***, 77 A.3d 1263, 1273 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014) ("Appellant's claim that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence presents a substantial question for our review.") (citations omitted). Accordingly, we will consider the merits of Appellant's issue.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the

---

[7] The Commonwealth maintains that Appellant's challenge is "unreviewable" due to his failure to identify which specific provision of the Sentencing Code was violated by the court's sentence. (Commonwealth's Brief, at 28-29). We disagree. ***See, e.g.***, ***Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000) ("[W]e hold that Rule 2119(f) requires only that [an] appellant's statement allow us to determine the allegation of trial court error and the immediate context of the allegation as it relates to the prescribed sentencing norms."). In this case, we conclude that Appellant's statement, though brief, satisfies this requirement.

sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015), *appeal denied*, 126 A.3d 1282 (Pa. 2015) (citation omitted).

> In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence.
>
> The statute requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.
>
> When evaluating a challenge to the discretionary aspects of sentence . . . it is important to remember that the sentencing guidelines are advisory in nature. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. . . .

***Commonwealth v. Kitchen***, 162 A.3d 1140, 1147 (Pa. Super. 2017) (citation omitted). Finally, "we presume that the court properly considered and weighed all relevant factors in fashioning [Appellant's] sentence[]" where it had the benefit of a presentence investigation report (PSI). ***Id.*** (citation omitted).

In this case, the trial court explained:

The Commonwealth affirmed and the [c]ourt noted that the Sentencing Guidelines recommended [thirty-six to forty-eight] months of incarceration for this conviction. (**See** N.T. Sentencing, 8/10/15, at 7). However, the longer sentence imposed by the court nevertheless fell within the statutory guidelines for first-degree felony [b]urglary.[b] On the record, the trial court adopted the Commonwealth's reasons as its own reasons for imposing the longer sentence. (**See id.** at 57-58). [T]he Appellant has a long history of previous convictions, and he had been disciplined three times for having drug paraphernalia and electronic devices while incarcerated. (**See id.** at 45-46). Moreover, the Commonwealth also read a statement from Mrs. Gliwa and her daughter that they "no longer felt safe in [their] home" due to the Appellant's actions and that "[t]his break-in has severely affected [Mrs. Gliwa's] life and [her] daily schedule." (**Id.** at 48). Considering the history of crimes committed by the Appellant, [his] likelihood of recidivism, and the danger posed by [him] to the public, the court did not abuse its discretion in imposing the sentence for the [b]urglary conviction.

> [b] "[A] person who has been convicted of a felony may be sentenced to imprisonment as follows . . . [i]n the case of a felony of the first degree, for a term which shall be fixed by the court at not more than [twenty] years." 18 Pa.C.S.A. § 1103(1).

(Trial Ct. Op., at 12-13) (some record citations omitted; citation formatting provided). In addition to the foregoing, we note that the trial court had the benefit of a PSI and mental health evaluation. (**See** N.T. Sentencing, at 46, 54).

Applying the foregoing law to our independent review of the certified record, we discern no manifest abuse of the court's sound discretion in sentencing Appellant. **See Caldwell**, **supra** at 770. First, because the court possessed Appellant's PSI and mental health reports, we presume that it properly considered and weighed all relevant information. **See Kitchen**,

*supra* at 1147.  Also, although unhappy with his sentence, which he maintains

is not "necessary to satisfy [his] rehabilitative needs[,]" Appellant has failed

to plead and prove that the "court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a

manifestly unreasonable decision."   (Appellant's Brief, at 48); **Caldwell**,

*supra* at 770 (citation omitted).  Hence, Appellant's sixth issue fails.

In his seventh and eighth claims, Appellant argues that the trial court

abused its discretion when it failed to grant his requests for curative

instructions due to the alleged prosecutorial misconduct committed during the

Commonwealth's closing argument.   (**See** Appellant's Brief, at 50-57).

Specifically, he maintains that the prosecutor improperly (1) suggested that

defense counsel is a racist and (2) referred to the muzzle flash of co-

defendant's gun. (**See id.**).   Appellant is due no relief.

> In accord with the long-standing principle that a prosecutor
> must be free to present his or her arguments with logical force
> and vigor, this Court has permitted prosecutorial advocacy as long
> as there is a reasonable basis in the record for the [prosecutor's]
> comments.

**Commonwealth v. Chmiel**, 30 A.3d 1111, 1146 (Pa. 2011) (citations and

quotation marks omitted; emphasis in original).  Further:

> A prosecutor may make fair comment on the admitted
> evidence and may provide fair rebuttal to defense arguments.
> Even an otherwise improper comment may be appropriate if it is
> in fair response to defense counsel's remarks.  Any challenge to a
> prosecutor's comment must be evaluated in the context in which
> the comment was made.

> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial[.]  Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.
>
> While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt. . . . [The] prosecutor must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable.

*Commonwealth v. Burno*, 94 A.3d 756, 974 (Pa. 2014), *cert. denied*, 135 S. Ct. 1493 (2015) (citations and quotation marks omitted).

Here, we begin by addressing Appellant's claim that the trial court abused its discretion in failing to give a curative instruction after the prosecutor suggested defense counsel is a racist.  (*See* Appellant's Brief, at 50-53).  Specifically, Appellant challenges the following argument by the prosecutor:

> What did [defense counsel] think when her kids walked into the courtroom?  That's a black student; he's scared of police. White student—I don't know—probably not scared of police. Asian, up in the air.  No.  Which did she think?  The black student, he'll run from police.  The white student, he'll stand right still. He'll follow commands.  No.  You know who it is?  The kids who are getting in trouble are the ones who run.  They ran from me. They run from the teachers.  Sometimes they're white. Sometimes they're Hispanic.  Sometimes they're black.

Sometimes they're Puerto Rican, Asian, whatever. What does she think of me? What judgments is she making about me right now—

[Defense counsel]: Objection, Your Honor.

[Prosecutor]: —the brown-skinned man in the courtroom?

THE COURT: Overruled. It's noted for the record. Please continue.

[Defense counsel]: Am I on trial?

THE COURT: [Counsel].

[Prosecutor]: What judgments is she making about all of you based on your skin color?

[Defense counsel]: Objection. I have a motion.

THE COURT: Overruled. Continue

(N.T. Trial, 6/08/15 Volume II, at 77-78).

First, we must note that the above comments by the prosecutor in no way gave an improper personal opinion about Appellant's guilt. ***See Burno***, ***supra*** at 974. Moreover, our review of the record reveals that the prosecutor's comments were made in response to defense counsel's statements introducing race as a theory to explain the car chase.

For example, defense counsel argued, in pertinent part, that:

[The officers] thought they saw something with that white female, right? They jumped the gun. They were there with their guns and their badges and their big-deal job, and they couldn't bother to get a little tiny detail, any kind of detail from that white female.

\*   \*   \*

- 21 -

[They did not think,] we better find out. We better find out what that lady is talking about before we jump the gun, before we take our prejudices about Impalas with tinted out windows and black men, three of them, young, in that Impala.

\* \* \*

Now, you know, I always hesitate a little to start talking about race and race relations and what happens with crime with this skin color and this gender and this level of education. I hesitate to talk about it, but I'm not afraid. I'm not afraid to talk about it. . . . It's really on if you're in a silver Impala with tinted out windows and you're a young black man and you're with two others. And maybe some of you on this jury could tell me a lot more about that [than] what I think I understand with this complexion and this gender and this level of education. But I can tell you, and maybe we can all agree, about what really seems to have happened . . . in one of those neighborhoods—one of these neighborhoods. Those police officers took after that Impala without a thought. Without a thought with their elite job because it was on. It was on. We're going to find those boys.

\* \* \*

Motive. Motive to shoot those three boys—either one of them, none of them—to when the night sun is flooding and the officers are whirling by, to pull out one of those firearms and discharge would be suicide. There would be three young dead men. It would be suicide. And they knew it. They knew it. They knew if they pulled over, the exact thing that they feared would happen[.] . . . That. And it is what happened. . . . They knew that if they pulled over that that was going to happen, and they knew if they shot, they would be dead. So they bought themselves some time and they drove a little more. . . .

(N.T. Trial, 6/08/15 Volume II, at 52-53).

After our independent review of the above portions of argument and the complete transcript in this matter, we discern no error. Considering the prosecutor's statements in context, the trial court properly found that they were made in response to defense counsel's closing argument, with the

oratorical flair allowed an advocate.  (*See* Trial Ct. Op., at 17); *Chmiel*, *supra* at 1146.

Additionally, the trial court, during its jury instructions, advised the jury that "closing arguments by counsel are not part of the evidence in this trial, and you should not consider them as such. . . . You are not required . . . to accept the arguments of any lawyer that you heard."  (N.T. Trial, 6/08/15 Volume I, at 48-49).  The jury is presumed to have followed this instruction. *See Aikens*, *supra* at 143.  Therefore, Appellant's seventh issue lacks merit.

Appellant's eighth argument, that the trial court erred in failing to provide a curative instruction after the prosecutor's reference to the muzzle flash created by co-defendant's gun, is waived.  (*See* Appellant's Brief, at 54-57).  Specifically, Appellant failed to request such an instruction.  *See* Pa.R.A.P. 302(a).[8]

In his ninth issue, Appellant argues that the trial court abused its discretion in sending jury instructions on the charge of second degree aggravated assault during jury deliberations because the Commonwealth moved on the charge as a crime of the first degree.  (*See* Appellant's Brief,

---

[8] Moreover, we note that the trial court properly overruled Appellant's objection to the prosecutor's closing argument about the muzzle flash because there was a reasonable basis in the record for his comments.  (*See* N.T. Trial, 6/04/15, at 11, 81, 124; N.T. Trial, 6/05/15, at 135, 164); *Chmiel*, *supra* at 1146.  Therefore, even it not waived, Appellant's eighth issue would not merit relief.

at 57-59). However, Appellant was acquitted of aggravated assault. Therefore, his ninth issue fails. *See Commonwealth v. Weis*, 611 A.2d 1218, 1227 (Pa. Super. 1992) (Noting that appellant's argument afforded him no relief where he was acquitted of charge).[9]

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2017

---

[9] We observe that, during deliberation, in response to the jury's question, the court provided the supplemental instruction only after allowing all counsel to suggest language that addressed their complaints. (*See* N.T. Trial, 6/09/15, 3-4, 24-27).